SNOW & a. v. PERKINS.

In the absence of any special contract or custom, manure made in the ordinary course of husbandry is regarded as a part of the realty, and passes by a conveyance of the land without reservation.

Manure made in livery-stables or buildings unconnected with agricultural property, and out of the course of husbandry, is personal property, and does not pass by a conveyance of the realty as an incident to it.

When personal property lies upon land of another, an assertion of title to it by the land-owner, and a refusal to allow the owner to remove it, constitute a conversion.

TROVER, for twenty-five cords of manure. Facts found by a referee. In the spring of 1877 the plaintiffs, Snow and Perkins, formed a partnership in the business of raising hogs. The hogs were kept in a barn cellar and yard adjoining, on a farm in Rollinsford, on which Perkins lived, and of which he owned one seventh, his brothers two sevenths, and his mother the remaining four sevenths. During the season thirty or forty cords of loam, for which the plaintiffs paid $27, was purchased off the farm, and drawn into the barn cellar, and this, with the droppings of the hogs, with such portions of the surface of the yard as were scraped up with them, constituted the manure in controversy. The hogs were not fed from the produce of the farm, and Snow had nothing to do with the farm, except the cellar and yard where the hogs were kept. In February, 1878, the hogs had been sold or removed, and May 6, 1878, the Perkins brothers conveyed their three sevenths of the farm to Clark & Bunker by warranty deed, containing no reservation of the manure or material in the barn cellar. Snow had knowledge of the trade, and assisted in making it. The plaintiffs offered to show a conversation between the plaintiff Perkins and Bunker respecting the manure when the deed was given. The referee excluded the evidence, and the plaintiffs excepted. February 26, 1879, Clark & Bunker conveyed their interest in the farm to the defendant Perkins, " reserving all manure belonging to us, said Clark & Bunker." The defendant testified that this reservation related to manure made on the premises while Clark & Bunker owned them. At the time the defendant received this deed, or shortly before, the plaintiffs first claimed of him the manure and material in the barn cellar; and in June, 1880, before bringing this suit, a formal demand was made for the manure, which still remained in the barn cellar, and the defendant refused to comply with the demand. The referee found that no part of the manure or material was the property of the plaintiffs at the time of the alleged conversion.

*Carter & Nason*, for the plaintiffs.

*T. J. Smith*, for the defendant.

CLARK, J. Manure made in the ordinary course of husbandry, in the absence of any special contract or custom. is regarded as a part of the realty, and passes by a conveyance of the land without reservation. *Sawyer* v. *Twiss*, 26 N. H. 345 ; *Conner* v. *Coffin*, 22 N. H. 538. But this rule does not apply to manure made in liverystables, or in buildings unconnected with agricultural property, and out of the course of husbandry. *Plumer* v. *Plumer*, 30 N. H. 558 ; *Needham* v. *Allison*, 24 N. H. 355. In such cases the manure is not considered an incident to the land, and does not pass by a conveyance of it. In the present case, the manure was not made

in the ordinary course of husbandry. The business of the plaintiffs was entirely disconnected from the land. The hogs were not fed upon the products of the farm. The loam, which constituted the principal ingredient of the manure, was purchased by the plaintiffs, and drawn from land outside the limits of the farm, and Snow, one of the plaintiffs, had no interest in the farm or its management, and has never conveyed his title to the manure.

It is contended that Snow is estopped to claim the manure, because he assisted in making the sale of his co-plaintiff's interest in the farm to Clark & Bunker in May, 1878. The case does not show any facts upon which to base an estoppel, and the evidence as to what was said about the manure at the time of giving the deed was excluded by the referee on the defendant's objection. If, as is asserted by the plaintiffs, the excluded evidence would have shown a claim by the plaintiffs at that time to the manure, and an assent by Bunker to that claim, the evidence was competent to rebut any claim of estoppel as against Snow, and should have been admitted. The evidence was probably excluded by the referee on the authority of *Conner* v. *Coffin, supra,* that a parol reservation of manure is inoperative, and that the evidence tended to contradict the deed; but Snow was not a party to the deed. In *Strong* v. *Doyle,* 110 Mass. 92, it is held that such evidence is admissible as showing the subject-matter upon which the deed was intended to operate, and a severance of the manure from the realty. But it is unnecessary to consider this question further. The manure was not made in the usual course of husbandry in carrying on the farm, and therefore it did not pass to Clark & Bunker under the deed of May 6, 1878; and the finding of the referee, as matter of law, that no part of the manure or material belonged to or was the property of the plaintiffs at the time of the alleged conversion, is erroneous.

It is claimed that if the plaintiffs are the owners of the manure, there has been no conversion of it by the defendant. The case shows a demand for the manure, and a refusal. No question appears to have been made on the trial as to the conversion, and the refusal must be understood as relating to the right to take the manure, and implying a claim of ownership, and a denial of the plaintiffs' title, and not merely as having reference to the right to enter upon the premises. *Town* v. *Hazen,* 51 N. H. 596; *Hinckley* v. *Baxter,* 13 Allen 139; *Woodis* v. *Jordan,* 62 Me. 490.

It is also objected that the plaintiffs cannot recover, because the manure was intermingled with the " scrapings " of the yard. The plaintiffs occupied the barn cellar and yard by permission or license of the owners, and had the right to take the manure, doing no unnecessary damage. It does not appear that the defendant made any such claim when the manure was demanded by the plaintiffs, and it is too late now to insist on this objection. The plaintiffs are entitled to judgment for the value of the manure at the time of

the conversion, with interest from that date. As the damages have not been assessed by the referee, the action must be recommitted for that purpose, unless the parties agree.

*Case discharged.*

BLODGETT, J., did not sit: the others concurred.